UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CAMILLE SCIELZI, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C24-5589-SKV <br><br> ORDER AFFIRMING THE COMMISSIONER'S DECISION |

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits (DIB). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff was born in 1970, has a master's degree and training in massage therapy, and has worked as a case worker and massage therapist. AR 37, 165-66. Plaintiff was last gainfully employed in or around 2017 to 2019. AR 166.

Plaintiff applied for benefits in March 2021, alleging disability as of March 1, 2019. AR 141-42. Plaintiff's applications were denied initially and on reconsideration, and she requested a

hearing.  The ALJ conducted a hearing on March 13, 2024, AR 31-60, and issued a decision finding Plaintiff not disabled on March 28, 2024, AR 14-25.

### THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one**: Plaintiff has not engaged in substantial gainful activity since the alleged onset date through her March 31, 2023 date last insured.

**Step two**: Plaintiff has the following severe impairments: fibromyalgia and obesity.

**Step three**: These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity** (RFC): Plaintiff can perform light work. She can lift and/or carry ten pounds frequently and twenty pounds occasionally, and stand and/or walk six hours in an eight-hour period; cannot climb ladders exceeding six feet, ropes, or scaffolds, but can occasionally climb ramps and stairs; can perform postural activities occasionally (i.e., bend, stoop, kneel, crouch, or crawl) and should work in an environment with moderate temperatures and occasional hazards; and would require simple and unskilled work that entails simple, routine, repetitive tasks.

**Step four**: Plaintiff cannot perform past relevant work.

**Step five**: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR 14-25.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-6. She appealed the final decision of the Commissioner to this Court. Dkt. 1. The parties consented to proceed before the undersigned Magistrate Judge. Dkt. 3.

/ / /

/ / /

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P., App. 1.

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 2

## LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

Substantial evidence is "more than a mere scintilla. It means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating symptom testimony, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## DISCUSSION

Plaintiff argues the ALJ erred by rejecting her symptom testimony, rejecting lay evidence, and at steps two and four. The Commissioner argues the ALJ's decision is free of harmful legal error, supported by substantial evidence, and should be affirmed.

/ / /

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 3

A. **The ALJ Did Not Err in Assessing Symptom Testimony**

Absent evidence of malingering, an ALJ is required to provide clear and convincing reasons to discount a claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). The ALJ here discounted Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms upon finding them inconsistent with the medical evidence and the evidence of her activities. AR 20-22. Plaintiff argues the ALJ's analysis lacked sufficient specificity, improperly employed an objective medical evidence standard, and improperly attempted to create a false equivalency between activities of daily living and competitive work. The Court, for the reasons set forth below, finds no error.

First, an ALJ's finding rejecting a claimant's testimony must be sufficiently specific to allow a court to conclude the ALJ rejected the testimony on permissible, not arbitrary grounds. *Brown-Hunter v. Colvin,* 806 F.3d 487, 493 (9th Cir. 2015). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Id*. (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). Neither a mere boilerplate statement, nor a summary of the medical evidence will suffice. *Lambert v. Saul*, 980 F.3d 1266, 1277-78 (9th Cir. 2020) (noting insufficiency of boilerplate statement that testimony was "not entirely consistent with the objective medical and other evidence for the reasons explained in this decision[,]" and that "'providing a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.'") (quoted sources omitted); *Laborin v. Berryhill*, 867 F.3d 1151, 1154-55 (9th Cir. 2017). An ALJ is not, however, required to analyze the claimant's testimony line-by-line, *Lambert*, 980 F.3d at 1277, or to believe every allegation, *Ahearn v. Saul*, 988 F.3d 1111, 1116 (9th Cir. 2021). Also, while the clear and convincing

reason standard ultimately requires an ALJ to "show his work", it "isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

The ALJ here described Plaintiff's testimony and discussed the objective medical evidence of record and the evidence of Plaintiff's activities supporting his finding of inconsistency. *See* AR 17-18, 20-22. The Court finds the path of the ALJ's reasoning clear and his findings sufficiently specific.

Second, an ALJ may not reject subjective symptom testimony based *solely* on the fact that it is not fully corroborated by objective medical evidence. *Smartt*, 53 F.4th at 498 (citing *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005)). However, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Id.* (emphasis in original). The objective evidence standard "requires that an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective testimony when there is no objective testimony evincing otherwise." *Id*. That is, an ALJ may not demand positive objective evidence supporting every allegation a claimant makes. *Id*.

In this case, the ALJ did not require objective evidence to support each part of Plaintiff's testimony. The ALJ instead identified inconsistencies between Plaintiff's allegations and the objective medical evidence of record, including, for example, examinations regularly showing Plaintiff in no acute distress, with full range of motion, and no physical or neurological abnormalities, as well as her denial of or failure to mention her alleged symptoms at those examinations. AR 20-21 (citations omitted). The ALJ's reliance on such inconsistencies was proper and is supported by substantial evidence. *See, e.g.*, *Smartt*, 53 F.4th at 499 (finding ALJ

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 5

properly "cited specific, clear, and convincing examples across a multi-year period contrasting Smartt's subjective pain testimony with objective medical evidence."); *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (ALJ may consider a claimant's inconsistent or non-existent reporting of symptoms).

Finally, an ALJ properly considers whether a claimant engages in daily activities inconsistent with alleged symptoms. *Smartt*, 53 F.4th at 499. This is true even where the activities suggest some difficulty functioning. *Molina*, 674 F.3d at 1113. The ALJ here contrasted Plaintiff's testimony of, for example, "constant muscle fatigue, muscle pain, spasms, dizziness, lightheadedness, fainting spells, weakness, joint pain, . . . , difficulty with memory, attention, and concentration[,] . . . difficulty lifting more than 10 pounds, squatting, bending, and kneeling, and standing or walking for prolonged periods", with her reports that she can perform personal care independently, prepares her own meals, performs chores such as mopping, dusting, vacuuming, doing dishes, doing laundry, and cleaning the bathroom, that she drives and goes out alone, goes shopping, and handles finances, and that she does not need special reminders to take care of her personal needs, groom, take medications, or go places. AR 21-22. The ALJ did not, in so doing, equate these activities with competitive work. Activities may undermine symptom testimony where they (1) contradict the claimant's testimony *or* (2) "meet the threshold for transferable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ here properly found the evidence of Plaintiff's activities inconsistent with Plaintiff's testimony as to the degree of limitation caused by her impairments. The ALJ, for this reason and for the reasons stated above, provided specific, clear, and convincing reasons for discounting Plaintiff's testimony.

B.     **The ALJ Did Not Harmfully Err in Assessing Lay Evidence**

Plaintiff argues the ALJ failed to provide the necessary germane reasons for rejecting the lay evidence offered by her partner and brother. *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (ALJ rejecting lay witness testimony must provide specific reasons germane to the witness). The Commissioner denies the applicable regulations required the ALJ to articulate how the ALJ considered evidence provided by nonmedical sources, *see* 20 C.F.R. § 404.1520c(d), that the ALJ nonetheless explained why he rejected the lay statements, and that the assessment has the support of substantial evidence.

The Ninth Circuit has not yet resolved whether an ALJ must provide germane reasons for rejecting lay evidence under the regulations applicable to this case. *See, e.g.*, *Hudnall v. Dudek*, No. 23-3727, 2025 WL 1379101, *2, 3-6 (9th Cir. May 13, 2025) (finding no need to decide issue because any error in failure to provide germane reason for rejecting lay testimony was harmless; containing concurring opinions taking opposing positions as to the new regulations and the germane reason standard); *Crummett v. King*, No. 23-3668, 2025 U.S. App. LEXIS 3235, 2025 WL 470890, at *2 (9th Cir. Feb. 12, 2025). Without that clarification, this Court continues to find no basis for the Commissioner's assertion that an ALJ need not articulate why the ALJ rejected relevant lay witness evidence. *See, e.g.*, *Mark C. J. v. Comm'r of Soc. Sec.*, C24-5252-DWC, 2024 WL 4182576, at *4 (W.D. Wash. Sept. 13, 2024). *Accord Connelly v. Colvin*, No. 23-35527, 2024 WL 5040994, at *2 (9th Cir. Dec. 9, 2024). *See also Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (an ALJ may not reject "significant probative evidence" without explanation).

The ALJ here noted he had considered the third-party function reports and correspondence submitted by Plaintiff's partner and brother. AR 22 (citing AR 227-46, 327-29).

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 7

He stated that, while the statements and reports were based on special knowledge that provided insight into the severity of Plaintiff's impairments and how they affected her ability to function, neither were "medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs or symptoms, or of the frequency or intensity of unusual moods or mannerisms, thus, the accuracy of their reports are questionable." AR 22-23. The ALJ also stated that, by virtue of their relationships with Plaintiff, the witnesses "cannot be considered disinterested third parties whose reports would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges." AR 23. The ALJ, finally, stated: "Most importantly, their reports are simply not consistent with the observations by medical doctors in this case." *Id*.

Neither the fact that the lay witnesses are not medically trained, nor the fact that they are, as a general matter, not disinterested third parties serve as valid reasons, germane to each witness, for discounting their testimony. *See Diedrich v. Berryhill*, 874 F.3d 634, 640-41 (9th Cir. 2017) ("'[R]egardless of whether they are interested parties, friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to his or her condition.'") (quoted source omitted); *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value; such lay witnesses will often be family members."). Indeed, "[t]he fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich*, 874 F.3d at 640.

However, inconsistency with the medical evidence is a valid, germane reason for discounting lay witness testimony. *Bayliss*, 427 F.3d at 1218. The ALJ here properly identified

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 8

inconsistency with the observations of the medical doctors as a basis for discounting the lay testimony. Further, because this finding was rational and is supported by substantial evidence, the above-described errors in the ALJ's analysis are harmless. *See Molina*, 674 F.3d at 1115. The Court thus finds no reversible error in the ALJ's assessment of the lay witness testimony.

### C.  The ALJ Did Not Err at Step Two or Step Four

Plaintiff argues the ALJ erred by excluding her diagnosed major depressive disorder, generalized anxiety disorder, and obstructive sleep apnea (OSA) as severe impairments at step two, and in failing to include the limitations these impairments cause in the RFC assessment. She points to evidence in the record as showing her waxing and waning mental health symptoms, and the fatigue she suffers as a result of her OSA. *See* Dkt. 7 at 10-11 (citations omitted). She also suggests that the record may be incomplete and insufficiently developed by the ALJ. *See id*. at 11, n.1 (citing AR 36-37).

The Court finds no support for Plaintiff's suggestion regarding the record. Plaintiff points to a discussion between the ALJ and Plaintiff's representative at hearing regarding an outstanding request for medical records, notes that no additional records were added after the hearing, and asserts that the ALJ "declined to assist in developing the record, stating only that he would consider the evidence in the file at the time he was ready to issue a decision[.]" *Id*. The record shows that Plaintiff's representative requested fourteen days, "with high hopes of being able to obtain the records within that timeframe[,]" that the ALJ advised he could not give a date certain on when the decision would issue, but that any records received prior to the decision date would be admitted and considered, and that the ALJ issued the decision fifteen days after the hearing. *See* AR 25, 31, 36-37. The record therefore shows the ALJ accommodated the representative's request for an additional fourteen days to supplement the record. The mere fact

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 9

1  that Plaintiff's representative did not submit any additional records does not support a conclusion
2  that the record is incomplete or that the ALJ failed in his duty to develop the record.  *See Mayes*
3  *v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record
4  further is triggered only when there is ambiguous evidence or when the record is inadequate to
5  allow for proper evaluation of the evidence.").

6  As related to her mental health impairments and OSA, Plaintiff accurately notes the
7  inclusion of diagnoses for these conditions in the record.  AR 652-53, 661, 939.  She does not,
8  however, demonstrate any associated error at step two or step four.

9  At step two, a claimant must make a threshold showing that her medically determinable
10 impairments significantly limit her ability to perform basic work activities.  *See Bowen v.*
11 *Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. § 404.1520(c).  "An impairment or combination of
12 impairments can be found 'not severe' only if the evidence establishes a slight abnormality that
13 has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290
14 (quoted source omitted).  "[T]he step two inquiry is a de minimis screening device to dispose of
15 groundless claims." *Id*. (citing *Bowen*, 482 U.S. at 153-54).  Neither symptoms alone, nor a
16 diagnosis is sufficient to establish a severe impairment.  Instead, a claimant must show her
17 medically determinable impairments are severe.  20 C.F.R. § 404.1521.  Moreover, even if an
18 ALJ errs in failing to find an impairment severe at step two, such error is properly deemed
19 harmless where limitations associated with the impairment are considered at step four.  *Lewis v.*
20 *Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  Finally, an RFC assessment and hypothetical
21 proffered to a vocational expert need not account for limitations or impairments the ALJ properly
22 rejected.  *See Bayliss*, 427 F.3d at 1217-18.
23

In this case, the ALJ discussed Plaintiff's depression and anxiety at step two, describing the medical evidence supporting his conclusion that they resulted in only mild limitations in functioning, noted that this conclusion was consistent with the opinions of the State agency psychological consultants, and concluded that, because they caused no more than a minimal limitation in Plaintiff's ability to perform basic work activities, these impairments were non-severe.  At step four, the ALJ limited Plaintiff to simple and unskilled work, entailing simple and routine repetitive tasks, with consideration of the effects of her mental impairments combined with fibromyalgia, effects of her obesity, complaints of brain fog, and treatment records that confirmed "that while the claimant has predominantly exhibited normal memory, attention span, and concentration, there have been periods in which she did exhibit a 'fair' level of functioning in [those] areas."  AR 22 (citing AR 189-96, 202-09, 327-29, 939).  The ALJ, in so doing, found Plaintiff more limited than assessed in the only medical opinions of record.  *See* AR 62-66, 74-75, 79 (opining Plaintiff's mental impairments were not severe and not assigning any associated limitations in functioning) and AR 18 (finding opinions persuasive and consistent with treatment records).

The ALJ did not address the OSA diagnosis at step two, but did discuss Plaintiff's fatigue at both step two and step four.  Specifically, at step two, the ALJ noted Plaintiff denied fatigue and other symptoms on multiple occasions.  AR 17 (citing AR 346, 754, 815, 819).  At step four, the ALJ again noted instances in the record when Plaintiff denied fatigue, AR 21 (citing, in relevant part, AR 346-49, 406-11, 753-54, 815, 819, 823-24), as well as an appointment in which she did report fatigue, AR 21 (citing AR 919).  The ALJ also, with consideration of Plaintiff's testimony and medical records, found Plaintiff more limited in both her exertional capacity and in some postural activities than opined in the only medical opinions of record.  *See* AR 66-69,

76-81 (opining Plaintiff could perform medium exertional work) and AR 22 (finding opinions unpersuasive and the evidence as a whole to support the conclusion Plaintiff was more limited in her exertional capacity).

In assigning error, Plaintiff offers a different interpretation of the evidence, but does not demonstrate the ALJ's interpretation was not rational. Nor does Plaintiff undermine the substantial evidence support for the ALJ's conclusions, including the ways in which the RFC accounts for her mental health symptoms and OSA-related fatigue by limiting her to light work, with additional mental, postural, and environmental limitations. *See* AR 19. Plaintiff therefore fails to demonstrate error at step two or step four.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 27th day of June, 2025.

S. KATE VAUGHAN
United States Magistrate Judge